ALICE JOHNSON AND ANOTHER v. BRAND STORES, INC.[1]

March 12, 1954.

Nos. 36,161, 36,162.

---

[1]Reported in 63 N. W. (2d) 370.

*Carroll & Thorson* and *Thomas J. Burke,* for appellant.
*Beaudoin, Thuet & Todd,* for respondents.

KNUTSON, JUSTICE.

Appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial in each case, the cases having been consolidated for trial.

The material facts in these cases are not seriously in dispute. Harry Brand owns, and for a number of years has operated, defendant department store in South St. Paul. The store faces east and has a front entry consisting of a recessed door which opens inwardly. As one enters the store from the outside the hinges are on the left side of the door, the handle and knob being on the right. There is an ordinary hydraulic device on the door so that it must be pushed in order to open it. Inside the store was a counter about seven feet in length in front of the door which was used for the display of jewelry, leaving an aisle between the door and the counter about seven feet in width. To the right of the door was located a self-weighing scale, which stood against the front wall. The base of the scale was about five to eight inches high and extended out from the wall 16 to 18 inches. The side nearest the door was about 18 inches from the north edge of the door.

On November 23, 1951, Alice Johnson, a woman 67 years of age, who will be referred to hereinafter as plaintiff, proceeded to enter the store. She pushed open the door, took one step forward and to the right, and tripped on the scale and fell, sustaining the injuries for which she now seeks recovery. Plaintiff testified that as she entered the door there were five girls in front of the jewelry counter. Defendant denies that there was anyone there. Plaintiff was an occasional visitor in the store. On this occasion she intended to go to the rear of the store by way of an aisle running east and west about at the end of the jewelry counter. It is undisputed that the

store was well lighted and that, had she looked up, she could have seen the scale.

■ The negligence upon which plaintiff predicates her right of recovery is the maintenance of the scale in the location where it was.

Both parties agree on the applicable rules of law. As stated in Smith v. Emporium Merc. Co. Inc. 190 Minn. 294, 297, 251 N. W. 265, 266:

"* * * The duty of a shopkeeper is to keep and maintain his business premises, including passageways, in a reasonably safe condition for use of customers or invitees. The shopkeeper is not an insurer of the safety of customers and is liable only for injuries resulting from his negligence."

While the case of Engdal v. Owl Drug Co. 183 Wash. 100, 48 P. (2d) 232, relied upon by defendant, is in many respects similar to the one now before us, there are some distinguishing features. In that case a similar scale was kept behind a post which was a part of the building. The Washington court observed that it was out of the line of travel.

The question of defendant's negligence and plaintiff's contributory negligence in this case is close to the border line. However, we have concluded that reasonable minds might differ as to whether one maintaining this scale, protruding as it did in close proximity to the door and in the path of one who entered intending to go to the rear of the store by way of the north aisle, would be exercising that degree of care required of a storekeeper. Such being the case, the negligence of defendant was for the jury. Much the same is true of plaintiff's contributory negligence. In view of the fact that plaintiff would be required to exert some pressure on the door to open it and that it might be expected that if she were intending to go to the north aisle she would enter the door at an angle and might in the short space of one step fail to see the scale, it becomes a jury question whether she exercised the degree of care required of her.

■ In instructing the jury, the court, among other things, said:

"* * * The plaintiff customer was not required to fix her eyes upon the floor upon entering the store of the defendant, as though

she expected to find an obstruction or obstacle on the floor, which she should avoid, unless you decide that a reasonably prudent person, under the particular facts and circumstances of this case, would have done so."

Apparently this instruction is taken from the opinion of the court in Phillips Petroleum Co. v. Miller (8 Cir.) 84 F. (2d) 148, 155. Part of the trial court's instruction in that case was as follows:

"The plaintiff was not required to fix his eyes upon the floor upon entering the room as though he expected to find a hole in the floor which he should avoid. He had a right to presume that the floor was in a reasonably safe condition for his use. The plaintiff was under the duty to make reasonable use of his faculties of sight and intelligence to discover conditions of danger in the washroom. If you find that the plaintiff failed to make reasonable use of his faculties of sight and intelligence before and at the time of entering the washroom, or toilet room, then he was guilty of contributory negligence, * * *."

The facts in the above case clearly are distinguishable from those in the case before us. There, plaintiff entered a washroom in a filling station and fell into an open manhole. He had used the washroom on several occasions previously when the manhole was closed. The door to the washroom opened inwardly, and the open manhole was not apparent until he had opened the door. It was so located that he might not see it until the door was swung into the room a considerable distance. In holding that plaintiff was not guilty of contributory negligence as a matter of law, the court said (84 F. [2d] 154):

"In the instant case, however, plaintiff entered the half-open door into the washroom intended for his use, and which he had theretofore been using with safety for some six months prior to the accident. He did not know that there was a manhole in the room, and there was nothing to put him on guard. It was not possible to see the open manhole until the door was swung into the room a con-

siderable distance, and the room was so small that in order to use the toilet he had to swing around the door and close it."

In upholding the instruction the court said (84 F. [2d] 155):

"It is urged that by this instruction the jury was told that plaintiff was not required to look in that part of the room where looking would be of any avail, but that in effect the jury was told that he might enter the room without paying any attention to the condition of the place he was entering. We do not think this contention tenable. It is based upon a consideration of a part only of the instruction. To give it such a meaning, the first sentence must be divided so that it will read: 'The plaintiff was not required to fix his eyes upon the floor upon entering the room.' But the court did not so instruct. That expression is modified by the remaining part of the sentence; to wit, 'as though he expected to find a hole in the floor which he should avoid.'"

As applied to the facts of the case under consideration, the instruction did not convey the same meaning as when applied to the facts in that case.

■ In the case before us it must be conceded that had plaintiff looked she could have seen the scale. She can no more ignore the obligation to look where her feet go than where the rest of her body goes. Only if there is some reasonable excuse for not seeing that which is in plain sight, can she claim she has exercised that degree of care required of ordinarily prudent persons. Here, the only obstructions, if there were any, was the effort required to open the door and the close proximity of the scale to the door. It was for the jury to say whether she should have looked at the floor or not and to determine whether, under the circumstances, plaintiff was excused from seeing that which plainly was in sight.

It appears from the record that, at the close of the instruction, court and counsel conferred; after the conference the court gave the following instruction to the jury:

"I believe in referring to the care required I said reasonable care was required on the part of the plaintiff, Alice Johnson. I didn't

use the word 'lookout.' Alice Johnson was required in exercising ordinary care or reasonable care to keep such lookout ahead and in the store, as a reasonably prudent person or a reasonably careful prudent person would have kept under the same facts and circumstances. This instruction, of course, is to be taken into consideration and used and applied with all the instructions heretofore given."

No attempt was made to withdraw the erroneous instruction previously quoted. The jury was left with the understanding that plaintiff was not required to observe what was on the floor. The harm thus created was not eliminated by the additional instruction. Nor does the concluding sentence of the harmful instruction eliminate the harm.

It is only when there is some distraction or other reason which will excuse the failure to see that which is in plain sight that it can be said that a person has exercised that degree of care required of an ordinarily prudent person. Ober v. The Golden Rule, 146 Minn. 347, 178 N. W. 586, is an illustration of this rule. In that case, plaintiff, while examining goods on defendant's tables, tripped upon a display rack or frame. In holding that she was not guilty of contributory negligence as a matter of law, we said (146 Minn. 348, 178 N. W. 586):

"* * * It [the owner of the store] could not reasonably expect that customers absorbed in the inspection of goods thus displayed would bestow the same degree of attention to their steps or to the floor *as would properly be required at places where it would not be likely that they would have eyes only for a merchant's display of his wares."* (Italics supplied.)

The instruction here under consideration in effect told the jury that plaintiff did not have to see what was on the floor in plain sight under any circumstances. It would be equally erroneous to instruct that she would not have to look where she was going at all unless a reasonably prudent person would do so. While it might be argued that such instruction is technically correct, it leaves the wrong impression with the jury. The jury should be told that it was plaintiff's duty to see that which was in plain sight unless

there was some excuse for not seeing. The question then is whether a person of ordinary prudence would have failed to observe the obstruction under the facts and circumstances of the case. That is quite different from stating to the jury that plaintiff is under no duty to fix her eyes upon the floor or to see an obstruction or obstacle which was there. The question should not be approached with the view in mind that plaintiff would not have to see that which was on the floor. The question of negligence and contributory negligence in this case is so close that the jury might well have been misled by the instruction complained of, and, in view of that fact, there must be a new trial.

Reversed.

[1]Reported in 63 N. W. (2d) 374.